O

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KERR CORPORATION,** | **CASE NO. SACV 11-0313 DOC (CWx)** |
| Plaintiff(s), | |
| v. | **O R D E R DENYING PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION** |
| **NORTH AMERICAN DENTAL WHOLESALERS. INC, ET AL,** | |
| Defendant(s). | |

Before the Court is Plaintiff Kerr Corporation ("Plaintiff" or "Kerr")'s Amended Motion for Preliminary Injunction (Dkt. 25) filed in the above-captioned case. The Court has reviewed the moving, opposing, and replying papers, as well as oral argument, and hereby DENIES the Motion.

**I.    Background**

Plaintiff Kerr Corporation manufactures dental products used in restorative dental procedures. These products include composite filling materials used to fill cavities; dental

cements; and dental syringes. First Amended Complaint ("FAC"), ¶¶ 5, 9; Amended Declaration of David Tobia ("Tobia Decl."), ¶¶ 3, 6, 8. North American Dental Wholesalers, Inc. and North American Dental, Inc. ("Defendants" or "NAD") are a dental and medical wholesale trading company. FAC, ¶ 8. Kerr asserts that it has used several trademarks for many years to label its dental products and promote them throughout the United States. *Id.* at ¶¶ 9-19. It claims that NAD sold six packages of Kerr consumable dental products that did not originate with Kerr and were thus unauthorized imitations of Kerr's dental products which bore Kerr's trademarks. It further argues that these products materially differed from the goods that Kerr manufactures. *Id.* at ¶¶ 20-1. As a result, Kerr avers that it received complaints from a few dentists who received a total of six packages of dental products that did not originate with Kerr. On December 14, 2010, Kerr allegedly contacted Defendants about the unauthorized imitations, yet NAD has allegedly not discontinued their sales nor provided Kerr with requested information regarding the imitations. *Id.* at ¶ 22. Kerr alleges that it has suffered, and is continuing to suffer, irreparable and substantial harm due to lost sales and a loss of goodwill. *See, e.g. id.* at ¶ 25.

Consequently, Plaintiff seeks (1) injunctive relief prohibiting the continued use of Plaintiff's trademarks, (2) an order demanding that Defendants recall distributed products, (3) compensatory damages, (4) statutory damages, (5) punitive damages, (6) reasonable attorneys' fees and costs, (7) an order demanding that Defendants destroy products that may infringe Plaintiff's trademarks, and (8) any other relief as the Court may deem just. *Id.* at Prayer for Relief.

Plaintiff initially brought its original Motion for a Preliminary Injunction in February 2011 (Dkt. 4) but voluntarily withdrew the Motion (Dkt. 24) and filed its FAC (Dkt. 23). Plaintiff then filed the present Amended Motion for a Preliminary Injunction (Dkt. 25).

**II. Legal Standard**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court may grant preliminary injunctive relief or temporary restraining orders in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). This equitable relief is within the discretion of the court after balancing various factors. *Benda v. Grand Lodge of the Int'l Assoc. of Machinists*

*& Aerospace Workers*, 584 F.2d 308, 314 (9th Cir. 1978). Traditionally, the "criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Dollar Rent A Car v. Travelers Indem. Co.*, 774 F.2d 1371, 1374 (9th Cir. 1985); *see, e.g., Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005); *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995).

It is indisputable that a "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 128 S.Ct. 2207, 2219 (2008). Thus, this Court will only grant an injunction if a plaintiff can make a "clear showing that [it] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 375 (2008). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district court[] and . . . such discretion must be exercised consistent with traditional principles of equity . . . ." *eBay v. MercExchange, LLC*, 547 U.S. 388, 394 (2006). The district court must weigh "all of the legal and equitable factors" when determining whether an injunction must issue. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1363 (Fed. Cir. 2008); *see also Automated Merchandising Systems, Inc. v. Crane Co.*, 357 Fed. Appx. 297, at *3 (Fed. Cir. Dec. 16, 2009).

**III.    Discussion**

Upon consideration of all the relevant factors described above, the Court does not find that Kerr has met its burden of establishing that the extraordinary relief of a preliminary injunction is appropriate.

**A.    Likelihood of Irreparable Harm**

"[P]reliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is *likely* in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) (holding that a mere *possibility* of irreparable injury is "too lenient")); *see also Alliance for the Wild Rockies v.* Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) ("[P]laintiffs may not obtain a

preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction."); *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1166 (9th Cir. 2011) ("Plaintiffs must show a *likelihood*, not a mere *possibility*, of irreparable injury . . . .") (emphasis in original)[1].

Kerr nonetheless demonstrates only a minimal effort to demonstrate irreparable harm, relying heavily on the idea that a plaintiff who demonstrates a likelihood of success on the merits of a trademark infringement claim is entitled to a presumption of irreparable harm. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999) (citing *Cadence Design Systems v. Avant! Corp.*, 125 F.3d 824, 826-27 (9th Cir. 1997)). This standard, however, no longer applies in light of the *Winter* case and the decision of *eBay Inc. v. MercExchange, L.L.C.*. 547 U.S. 388 (2006). *See Aurora World, Inc. v. Ty Inc.*, 719 F. Supp.2d 1115, 1167 (C.D. Cal.2009) (citing cases and noting that "[f]ollowing *Winter*, several district courts in the Ninth Circuit have found that the presumption is no longer valid" and that the *eBay* case was even more "pertinent"). In *eBay*, the Supreme Court established that a plaintiff does not automatically succeed at obtaining an injunction merely by showing that infringement occurred. *eBay*, 547 US. Though the *eBay* case addressed a permanent injunction, its logic extends to the preliminary injunction stage as well. *Aurora World*, 719 F. Supp at 1167 (citing *Hologic, Inc. v. Senorx, Inc.*, 2008 WL 1860035, *15 (N.D. Cal. Apr. 25, 2008)). More importantly, "[t]he *eBay* holding is not limited to patent cases; indeed, the Ninth Circuit has applied it in a trademark case." *Aurora World*, 719 F. Supp. at 1168 (referring to *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006)). Accordingly, Kerr cannot evade its burden to demonstrate a likelihood of irreparable injury even if it established a likelihood of success on the merits, which, as the Court will describe below, it does not.

Instead, the context under which this Motion is brought reveals, at best, a lack of urgency in this matter–and, at worst, bad faith by Kerr. NAD alleges that Kerr waited approximately five

---

[1] At oral arguments, Plaintiff's counsel insisted that the Ninth Circuit does not use this heightened standard, but *Park Village* is a recent case of which counsel admitted it was unaware, as is *Cottrell*.

4

months after learning that NAD had sold allegedly inauthentic Kerr products before filing its original motion seeking an injunction in February 2011. Opp'n, 2. Indeed, Kerr then voluntarily withdrew that motion, and filed its FAC and amended motion, which it did not notice for a hearing until as late as June 6, 2011. Kerr cannot plausibly assert that it faces irreparable injury because of NAD when it demonstrated little urgency in its seeking a preliminary injunction. It has been roughly eight months since Kerr learned of NAD's alleged infringement; the delay in filing this Motion stemmed directly from Kerr's own decisions about how to proceed with this litigation. Kerr defends its delay, insisting that it was "diligently" working to resolve the matter through conversations with NAD and through its own investigations. *See* Reply. To be sure, Kerr has the right to strategize and file its motions according to its own assessments of what is best and how much investigation is needed. But it must be prepared to deal with the consequences of its own litigation strategies.[2] Kerr has not convinced the Court that the extraordinary remedy of an injunction is warranted to protect it from any irreparable harm following its long delay in seeking an injunction. Its delays necessarily suggest that a lack of urgency exists. *See Hansen Beverage Co. v. Vital Pharmaceutical, Inc.*, 2008 WL 5427601, *6 (S.D. Cal. Dec. 30, 2008) ("Delays in requesting an injunction, whether for months or years, tend to negate a claim of irreparable harm."); *Life Techs. Corp. v. AB Sciex PTE, Ltd.*, 2011WL 1419612, *7 (S.D.N.Y Apr. 14, 2011) (explaining that a "failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'"(quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir.1985) (additional citations omitted)). Though Kerr was certainly free–and perhaps prudent–to conduct investigations and to pursue other courses of action other than a drastic remedy of injunction, its decisions to do so even when they resulted in no possibility of an

---

[2] Furthermore, the evidence suggests that the reason Kerr was not successful in its discussions with Defendants was because Defendants explained to it that there was no need for a preliminary injunction because they had none of the relevant products in stock and have had not since the time of Kerr's Complaint. *See* Declaration of Naftali Kalfa ("Kalfa Decl."), ¶¶ 2-7.

injunction for eight months certainly shed light on the analysis of irreparable injury. As any good dentist will tell you, one cannot enjoy the cake without the cavities.

More troubling to the Court is NAD's additional argument that this Motion has been brought in bad faith as a direct consequence of pending litigation by NAD and other plaintiffs against Kerr in the Eastern District of Pennsylvania.[3] NAD contends that this preliminary injunction is pretextual and has been sought as a means through which to eliminate direct competition with NAD. Opp'n 2. Indeed, the evidence before the Court suggests that Kerr took action already on its own as early as the fall of 2010 to warn its dental retailers that they had been sold Kerr products that were inauthentic. On December 30, 2010, Kerr sent a letter to its retailers that they should not acquire products from NAD. This led to NAD filing suit against Kerr in the Pennsylvania action in January of 2011. Roughly one month later, Kerr filed the present action (Dkt. 1).[4] Though the Court does not go so far as to determine that this action was or was not brought in bad faith, the timing once again gives this Court pause in its evaluation of the Motion.

NAD also argues that a preliminary injunction is unnecessary because Kerr's dental products from the six production lots are no longer available for resale. Kerr, however, maintains that there "remains a not insignificant possibility that products from the lots at issue could again be sold" to NAD. Reply, 2. But Kerr misstates the legal standard; the Court will not award the extraordinary relief of a preliminary injunction based on a "not insignificant possibility." Instead, the standard calls for a finding of a likelihood of irreparable harm. A mere possibility is "too lenient." *Winter*, 555 U.S. at 7. Kerr's argument for irreparable injury would need to be juiced up significantly to come even close to suggesting the need for an injunction.

---

[3] The Court GRANTS NAD's request for judicial notice as to the Pennsylvania action.

[4] The Court has not received a request by NAD to transfer the case to the Eastern District of Pennsylvania, but would be interested to hear the parties explanations as to why this matter should or should not be transferred to that court, which is the district of the first-filed action.

6

Kerr further insists that the relevant inquiry is not whether additional products will be sold but whether the manufacturer supplying will continue to supply products they allege are counterfeited. Reply, 1-2. Kerr contends that "many of the genuine products at issue continue to be within their shelf life (with one not scheduled to expire until as late as February 2012) . . . ." *Id.* Kerr may be right that the issue of whether future products can be sold is not dispositive. Yet, again, this concern about products already sold is belied by Kerr's own delay in pursuing this injunction. February 2012 is only eight months away from the present time; the same amount of time Kerr has waited before this hearing on its preliminary injunction request. Kerr's squandering of *half* the time it asserts it has the potential to be harmed suggests a lack of urgency that deems their allegations of irreparable injury dubious at best. *See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *Givemepower Corp. v. Pace Compumetrics, Inc.*, 2007 WL 951350, *7 (S.D. Cal. Mar.23, 2007) (finding that a delay of two months revealed a lack of irreparable harm because "nearly one-third of the entire length of the [relevant provisions] had elapsed prior [to] Plaintiff first requesting injunctive relief pursuant to that provision"). The period of potential use of these products is close to expiring; the most significant and arguably urgent period of time for which an injunction would have been warranted has therefore already passed.

Finally, the Court is not convinced that the alleged harms Kerr may suffer in the absence of a preliminary injunction constitute more than monetary harms. "[L]ost sales standing alone are insufficient to prove irreparable harm." *Automated Merchandising Systems, Inc.*, 357 Fed. Appx., at *3 (citing *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)). As *Automated Merchandising* recognized, if lost sales sufficed to satisfy the moving party's burden, irreparable harm would be found in nearly every case. 357 Fed. Appx. at *3 (quoting *Abbott Labs*, 452 F.3d at 1348). Instead, "[l]ost sales (without more) are presumed to be compensable through damages." Moreover, *even if* lost sales constituted irreparable injury, Kerr fails to link sales of the alleged inauthentic products with any lost sales. Kerr responds, however, that it is more concerned about the poor quality of the allegedly infringing products, about which it received complaints, than about sales. This suggests a concern over future loss of

7

its dominant market share. But concerns over a "lost market share must be proven (or at least substantiated with some evidence) in order for [them] to support entry of a preliminary injunction . . . ." *Automated Merchandising*, 357 Fed. Appx. at *301. Though Kerr has demonstrated that it received complaints about some of the products, it has not demonstrated that these complaints have affected its market share, or, alternatively, the good will of the company. Indeed, as Defendants pointed out at oral arguments, the entire value of the products at issue was under three-hundred dollars, and no complaints have been received since November 2010. Kerr's reliance on the limited complaints it received about a limited group of products fails to persuade the Court that the company's goodwill has been impacted.

Kerr has therefore failed to establish an irreparable injury; not only has it revealed a lack of urgency at issue, but it further appears that any injury is compensable through damages at a later time.

### B. Balance of Equities and Public Interest

Under *Cottrell*, courts "will not grant a preliminary injunction, however, unless [the] public interests outweigh other public interests that cut in favor of not issuing the injunction." *Cottrell*, 632 F.3d at 1138. Moreover, the Court "need not consider public consequences that are 'highly speculative.'" *Stormans v. Selecky*, 586 F. 3d 1109,1139 (9th Cir. 2009) (quoting *Golden Gate Restaurant Association v. City & County of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)). Kerr contends that the balance of equities and the public interest concerns fall in favor of granting an injunction, because it will be harmed by the result of non-conforming products from the lots at issue and the resulting confusion to its consumers.

"The likelihood of confusion to consumers is [a] critical factor in our consideration" of the harm to the public. *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 995 n.5 (9th Cir. 2009). "The public has an interest in avoiding confusion between two companies' products." *Id.* Where there is no finding of likelihood of confusion, however, "an injunction [] depriv[es] consumers of a choice of products." *U.S. ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993). Because the Court does not find that Kerr has

established a likelihood of significant confusion, Kerr has not shown that either the public interest or the balance of equities falls in favor of issuing an injunction. Likewise, Kerr has failed to proffer *convincing* evidence of any legitimate safety concerns that would implicate the public interest. This is especially true given the fact that the products are due to hit their expiration dates shortly; accordingly, as discussed above, even if the Court assumes that the non-conforming products could pose safety concerns, the most risky time period would have already passed, yet no recent complaints have emerged. Indeed, if future concerns arise, Kerr can always move for an injunction again should new facts emerge.

Furthermore, though Kerr attacks NAD's failure to explicitly respond to these two factors in its briefing, the burden is on Kerr, as Plaintiff, to establish that these factors fall in its favor. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) ("The plaintiffs bear the initial burden of showing that [issuance of an] injunction is in the public interest.") (citing *Winter*, 129 S.Ct. at 378). Thus, Kerr cannot rest on NAD's limited arguments, but must affirmatively convince the Court that the injunction is in the public interest. Given the breadth of the injunction, and the fact that it requires NAD to know information to which it may not have easy–or any–reasonable access, the Court finds the injunction burdensome on NAD. As a result, the balance of hardships does not weigh in favor of Kerr–especially given the fact that the chance of any items being resold is small at best, and that the items are due to reach their expiration date quite soon. To force NAD to comply with a broad injunction in the face of limited risk to Kerr is unwarranted. Through seeking this injunction, Kerr attempts to force NAD to slam the brakes on the status quo–in spite of the fact that Kerr has not responded to its purported discoveries with a sense of urgency. Yet without sufficient evidence to show an irreparable harm would otherwise result, Kerr's proposed injunction would unfairly leave behind metaphorical skidmarks for NAD to scrub away. Kerr has failed to show that its purported need for an injunction justifies burdening NAD .

### D. Likelihood of Success on the Merits

The evidence before the Court regarding the merits of Kerr's claim fails to convince the

Court that Kerr is likely to succeed on the merits. The Court therefore declines to express a position on the substantive strength of Kerr's case without the benefit of discovery. To determine the likelihood of confusion in regards to a trademark infringement claim, the Court must consider some of the following factors: (1) the trademark's strength; (2) the relatedness of the two products; (3) the trademarks' similarities; (4) any evidence of past confusion; (5) the overlapping areas of the parties' marketing; (6) the kind of good and the typical amount of caution consumers display in regards to that good; (7) defendant's intention in using the trademark; and (8) the likelihood of expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979); *see also Aurora*, 719 F. Supp. 2d at 1155. The Court need not "rigidly weigh[]" these factors, nor need it consider all of them. *Dreamweks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

       The Court has considered these factors, and determines, however, that the likelihood of success analysis does not weigh sufficiently strongly in Kerr's favor so as to overcome the effect of the Court's findings under the irreparable injury and balance of equities analyses. To the contrary, Kerr has fallen woefully short of proving its burden of establishing probability of success on the merits. For example, as the Court has noted above, the evidence of confusion has been minimal–and Kerr has not shown that NAD was responsible for this confusion, nor that the confusion is probable again, given the delay and subsequent changed circumstances. *See M2 Software v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir.2005). This is especially true given the conversations Kerr immediately had with dentists who complained, purportedly clarifying any confusion that may have resulted. No evidence suggests this is likely to occur again–indeed, as discussed above, NAD has called into doubt even the *possibility* of future confusion.

       Similarly, Kerr offers declarations purporting to establish that there are two dental retailers who could have purchased the products at issue from NAD in 2010. Declaration of Darryle S. Grover ("Grover Decl."); Declaration of Keyhan Kashfian ("Kashfian Decl."). Each of these declarations, however, asserts that it is possible that the products at issue came directly from Kerr. Grover Decl., ¶¶ 3-4; Keyshan Decl., ¶¶ 2, 4. This cuts against any showing of bad

faith or of NAD's bad intentions–let alone whether infringement even occurred. Likewise, this makes it difficult to find that Kerr is likely to succeed on the merits–especially when considering the other factors discussed above.

There is also minimal evidence that the products at issue were defective–or were defective as a result of NAD as opposed to Kerr's manufacturing or production errors. *See* Opp'n, 12-19. Though this Court has denied NAD's request for a preliminary trial before deciding whether or not to issue this injunction, the lack of convincing evidence by Kerr at this time certainly speaks against Kerr's likelihood of eventual success.

Kerr has not convinced the Court of likelihood of success of the merits, especially when weighing its utter failure to demonstrate a likelihood of irreparable harm, and a lack of showing a balance of equities favoring Kerr or a public benefit to granting a preliminary injunction.

**IV. Disposition**

For the reasons stated above, the Court hereby DENIES Plaintiff Kerr's Amended Motion for a Preliminary Injunction.

IT IS SO ORDERED.

DATED: June 9, 2011

_____
DAVID O. CARTER
United States District Judge